Could the clerk please call the first case? 312-0196, People of the State of Illinois, Appalachia, Mark Austell v. Dietrich Richardson, Appellant Gabrielle Green. Ms. Green. Good morning. May it please the court, counsel. My name is Gabrielle Green. I'm with the Office of the State Appellant Defender. And I represent Dietrich Richardson, the appellant in this case. Mr. Richardson was charged with armed robbery and unlawful use of a weapon by a felon. After a jury trial, he was convicted on both charges and sentenced to 30 years imprisonment. Now, the focus of his trial was basically on his alibi testimony. And on appeal, we raised two issues, which both deal in part with the alibi. For the purpose of oral argument, I'd like to address those chronologically as they occurred during trial. So I'll be addressing the second issue first, followed by the first issue. Mr. Richardson, first I'd like to talk about the improper admission of his post-arrest silence. Now, on the state's rebuttal case, the state called Detective Watkins, who interrogated Mr. Richardson about his involvement or possible involvement in the armed robbery. And during the prosecutor's questioning of Detective Watkins, the prosecutor elicited improper post-arrest silence by asking the detective if Mr. Richardson gave or said that even though Mr. Richardson denied any involvement in the robbery, if he mentioned to Detective Watkins this alibi of being at Red Lobster, the alibi that he now forwarded during trial. And that elicitation was improper. Now, not only did the prosecutor elicit that improper testimony, the prosecutor then argued this information during the closing arguments, saying if Mr. Richardson wasn't at Red Lobster, go check that out. Listen to that testimony. And that was improper. And this draws a almost identical parallel to this court's decision in People v. Sanchez, where it was the same kind of elicitation of improper post-arrest silence, and then arguing during the closing arguments. Now, Sanchez was ruled on found improper based on the Illinois evidentiary rule, which is different from Doyle, in that the Illinois rule finds that post-arrest silence is improper because it's immaterial and it's irrelevant. And therefore, it shouldn't be admitted for that reason. And this court found that the elicitation of such evidence isn't warranted. And therefore, it should not be warranted in this case. Now, the state does indicate that there are exceptions to that Illinois rule, those being if the defendant says that he or she did make an exculpatory statement to the police prior, or if the post-arrest statement is inconsistent with the testimony at trial. Here, where Mr. Richardson offered an alibi, it was not inconsistent with his post-arrest silence or with his indication that he was not involved in the robbery. Those two things are not inconsistent. And therefore, it was improper for such evidence to be admitted during trial. Now, there was another similar violation, also when the state was questioning Detective Watkins. This dealing with the indication that Mr. Richardson invoked his right to be on the interrogation. When Detective Watkins was asked about the contents of the interrogation, he gratuitously offered that Mr. Richardson volunteered or indicated that he did not want to speak anymore. And even though the states didn't directly elicit this testimony, and even the state didn't mention it in their closing arguments, the gratuitous offering of this information was also improper. The case of People v. Bunning indicated this, that it's plain error for the elicitation of the admission of this type of evidence. Was there any suggestion by the state that this was indicative of guilt? No, the state didn't mention it at all. It could be that the state knew it was improper, and therefore didn't mention it again. But the record is silent as to that. But they didn't mention that at all. The only thing that the state did mention was the fact that Mr. Richardson didn't offer his alibi to the police when first offered, or when he was first questioned. And that was during closing. That was during closing, correct. Now, neither of these issues were preserved. However, this court can reach these issues. First, Bunning indicates that it is plain error, but also because the evidence was close in this case. We have an alleged victim who identifies the defendant, but we have the defendant who presents an alibi, which is very different from a lot of alibi cases that we typically see. Typically, it's a girlfriend who says he was with me and fell asleep at some point, and therefore can't account for his time at a certain point. But here, Mr. Richardson's alibi is supported by physical evidence. We have his grandmother who said, he was with me. He took me to Walgreens. She produced a receipt. She then said he dropped her off at Red Lobster. We had someone, a friend from Red Lobster, also testify to seeing him. When the grandmother, Dorothy Buckner, went home, she sees that, or she finds out that the police are trying to arrest Mr. Richardson for armed robbery. And credibility can be given to her testimony, because she did save the receipt. She said that no one would listen to me. And she saved the receipt, not just for random reasons. She saved the receipt because it was the only proof, physical proof, that she had that Mr. Richardson was with her at a specific time that would make it incompatible with him to be able to commit the armed robbery. We also, well, then that kind of brings us to the second issue. We argue that the trial court erred in denying surrebuttal testimony that the defendant had requested. The state, on its rebuttal case, brought in a witness, Sandra Eaton, who was a daycare worker, who gave new, testified as to new evidence. She testified that Mr. Richardson, she wasn't familiar with him. She testified that there were these rules in place at the daycare that only authorized individuals can pick up children. And she brought in a time sheet, or a sign-up sheet, indicating that someone with the initials DB picked up Lakeisha Buckner's kids on the incident date. And this testimony was extremely damaging to the defendant's credibility, even though she testified as to events that occurred well after the commission of the armed robbery. The effect of that testimony damaged the defendant's credibility and his testimony that he was somewhere else at the time of the armed robbery. Why was that testimony relevant? Sandra Eaton's testimony? It wasn't relevant as to whether or not he committed the offense. But because she called into question his credibility as to what he was doing after, and therefore, I think it came to call into question his whole testimony. I think the, well, it seems like the evidence presented at trial indicated that the defendant wasn't there and he had these series of events. But if he wasn't telling the truth about what he was doing after the alleged robbery, it was, I guess, possible that he wasn't telling the truth about what he was doing at the time of the robbery. So I think there may have been some relevance as to why it was allowed. But the effect was very, very damaging to the credibility of Mr. Richardson's alibi testimony. And Mr. Richardson, in response, wanted to have his mother testify as to a time card to indicate that she wasn't the individual, presumably the only individual or authorized individual who could have picked up the kids, that she was not that individual. And the court essentially agreed that her testimony was relevant. He agreed to allow her to testify. He only prevented her from testifying because she was in the courtroom during the course of the trial and therefore violated the exclusion order. And while the exclusion order is pretty much in place to prevent witnesses from tailoring or changing their testimony with what's been previously presented, that wasn't an issue here because she was testifying as to a time card which couldn't be changed. It was something that couldn't be altered. And that was the only thing she was going to testify to. Now, there is a test that is instructive as to whether or not the court has abused its discretion with respect to allowing a witness to testify if they violated the exclusion order, that test being whether or not the information is material or whether or not the defendant caused the violation. But that test cannot trump or should not trump the defendant's right to offer aid to defend himself. And here, where Denise Buckner was testifying as to something that couldn't be altered, and the court preventing her from testifying it did, prevents essentially the defendant from defending himself with respect to the credibility issue. Now, the state offers that this information could have been brought out during the defendant's case in chief, but his mother's time card wouldn't have been relevant during his case in chief, which was at a time when his alibi hadn't even been questioned yet. The state also argues that even if she did present the time card, or even if she didn't pick up the kids, it doesn't prove that he picked up the kids. But this, I think, the state misunderstands the purpose for why Denise Buckner was testifying. She wasn't testifying to bolster the defendant's testimony that he did pick up the kids. Instead, she was there to rebut. And even in that sense, that wouldn't have been proper rebuttal testimony. But she was there to rebut Sandra Eaton's claim that there are these set of rules, and only authorized individuals can pick up the children. If only someone with the initials DB picked up the kids, and the only two authorized people, one of them was at Red Lobster at the time, and the other person was at work, then it would have to be that unauthorized individuals are allowed to pick up the kids. And it would have allowed the jury to put Sandra Eaton's testimony, or to filter her testimony in a different way, because her testimony was so tied to those two documents, the authorization sheet and the sign-out sheet. Mr. Richardson also offered the testimony of his sister, Lakeisha Buckner, to testify as to certain things, including the fact that the defendant regularly picks up the kids. This testimony. Isn't that one big rabbit hole that the trial court went down in this trial? Because when did this incident occur? It occurred earlier in the day. When? We know it was earlier than 440. Correct. But we don't know when, earlier than 440. We don't know earlier. No. No. That's true. And when's all this picking up the children? Well, I think in my reading of the transcripts, I think if the defendant says that I was here, and that I went here, and that I went here, if the state can punch a hole in what he said at some point, it kind of discredits everything else he said. So I think that was kind of the goal of what the state was trying to do in presenting this witness. If he didn't pick up the kids, and he wasn't at Red Lobster, and he wasn't, you can't believe anything else he said. And I think it was pretty damaging. So yeah, the Eaton testimony did become the focus, even though it occurred well after the commission of the offense. But I think it was possibly what the jury focused on. And if they couldn't believe him there, then that was it. His credibility was pretty much blown at that point. Counsel, that's two minutes. Thank you. His credibility was blown at that point. So with Sandra Eaton saying he regularly picks up the kids, it also called into question the policies that only authorized people can pick up the kids. With her saying, getting into Sandra Eaton's scheduling, also seemingly irrelevant to the charge. But where she testified, if Sandra Eaton testified, I don't know. I've never seen Mr. Richardson before. I'm not familiar with him. Lakeisha was going to testify that she leaves at 5, so she wouldn't know him. And where the sign-up sheet indicated that the kids were picked up after 6, the jury could understand why Sandra Eaton's testimony wouldn't be inconsistent. It's possible that she wouldn't know him, because she's not there after 6 or after 5. So the court erred in not allowing or misunderstanding the purpose of Lakeisha Buckner's testimony in that respect as well. Was she also going to testify that he did pick up the children that day? She was. She was. But again, I'd argue that that wasn't meant to bolster the fact that he did pick up the kids. But it was used to state that these policies that only authorize people can pick up the kids is not true. When she came in with these documents, that seemed kind of unchanged. That was something that the jury could kind of hold on to, that there are these policies and this is how it works. But the Cerro Butto witnesses were cutting into the actual documents that she brought in, that her whole testimony was based on. OK, thank you. Mr. Asta? Good morning. May it please the court? Counsel. As counsel started with the second issue raised, I will also address it in the same order that counsel. In the second issue, the defendant raised in his brief, he argues that he's denied the right to a fair trial by the volunteered rebuttal testimony of Detective Aaron Watkins and by the people's, quote, use of defendant's post-arrest silence regarding his alibi. Defendant asserts that Watkins' non-responsive answer to the prosecution question was evidence that defendant invoked his right to remain silent. Defendant did not preserve this issue for appeal and argues plain error. At the time of the interview with Detective Watkins, defendant was in jail on charges of obstructing an officer. There's no indication in the record that defendant had been arrested on charges at issue at the time of the interview. And even if he had, defendant clearly chose to speak with Watkins about this particular case. In a trial, Watkins did not make any comment that defendant had remained silent post-arrest. But he volunteered in the non-responsive answer that at some point, defendant asked to be taken back to the jail. And the records show that at no time did defendant invoke his right to remain silent, that Fifth Amendment right. He merely indicated that he was ending the interview. He wanted to go back to jail. Now, in rebuttal cross-examination, after having elicited responses from Watkins that defendant denied robbing anyone, defense counsel specifically asked Watkins, and then defendant wanted to go back to jail. I didn't do it. I didn't rob nobody. I make $10 an hour. Take me back to jail. And Watkins' response was equivocal to defense counsel's question. He said, in the spirit, yes. So clearly, at trial, defense counsel asked Officer Watkins whether defendant asked to end the interview and to return to jail. Now, our Supreme Court in Bush stated that when a defendant procures, invites, or acquiesces in the admission of evidence, even if the evidence is improper, the defendant cannot contest the admission of that evidence on appeal. Defendant did not preserve this issue for appellate review. In a trial, defense counsel both acquiesced in and procured the evidence the defendant now contests for the first time on appeal. As far as the plain error argument, defendant argued that the evidence was close. And the people dispute that in that the victim testified positively that the defendant had robbed him at gunpoint. He said he was a foot away from him. Defendant had a gun in his chest. He looked at the defendant because he wanted to know what the person looked like who was holding a gun to his chest. He testified that his vision is 20-20. He had had it tested two months prior to this. The sun was not in his eyes. So he had a positive identification of defendant as the perpetrator. Now, as far as the timeline involved here, there's some discussion that defendant could not have done it because he was taking his mother or his grandmother, I guess it was, to the Red Lobster at this time. But the people in our brief, we pointed out that defendant could have done this crime given the timing and the distances involved. We had the police officer who said somewhere around 440, he got a call to be dispatched to speak with the victim at the restaurant where it occurred. And the grandmother said, he picked me up somewhere between 430 and 440. It would be about five minutes, approximately, travel time to get from point A to point B from what I've seen in the evidence. So it's entirely possible that within the time frame, the defendant could have committed the crime and still done everything that everybody said he did. He could have taken grandmother to the Red Lobster, et cetera. And so the evidence is not close in this case. And so the people, because it was not preserved, and defense counsel brought this evidence out in trial himself, the people asked this court to decline this issue. Now, going back to the first issue on appeal, I'm sorry, Your Honor, I have a question. There's some discussion about police officers testifying that they pursued a white SUV. Is there anything about that that ties to the defendant? Not the SUV. And I don't think there was ever any indication in the testimony that that SUV had anything to do with the defendant, because his car was a totally different car, and that was acknowledged at trial. So why was it testified to? What was the point? It was the point that the officers were in the area because the crime was committed. That seemed to be a secondary issue, except it just is the point of there was crime committed. That's why officers were in the neighborhood looking for suspects. That's the only reason it seemed to have been brought out. There's a whole lot of detail here for making that point, that they followed people who were wearing the same kinds of things that were supposed to have been worn, and somebody ran like he had a gun. All of that seems totally irrelevant to this case, and it seems like piling on. I don't know if it would be piling on. It certainly did not indicate that defendant committed the crime. I don't think there's any way one could say that that particular evidence of the white SUV and the fact that there were other suspects who were similarly dressed would have indicated that defendant did that. So I don't disagree with your assessment that that particular testimony may not have been particularly strong for the people's case, but I don't believe that that was the strongest evidence. Again, we have the victim who positively identified defendant as the perpetrator. So that's the evidence that's most key. The other evidence is, while it was brought out, I believe it was only brought out, as I said, for the purpose of showing why the officers were in the defendant's neighborhood at the time. OK, but he wasn't there. Wasn't where? At the time. You mean with the SUV? Yeah. That's correct, but that's not the crime he was charged with, ma'am. Your Honor, he was charged with committing a crime at a restaurant nearby. These other individuals happen to be in the area. Whether they had anything to do with this particular crime, I don't know. I don't know that that evidence could have convicted defendant, because he was not listed. It was one of the individuals in the SUV, and there was no real evidence from that connecting defendant specifically to the crime. So. OK, I'm a little confused now. I thought that the defendant was charged with the armed robbery of the man in front of JJ's Fish House. Absolutely. But there's no indication that the individuals in the white SUV were similarly charged, and that's a wholly separate case if, in fact, they were. We're talking about defendant at the restaurant. Whether or not he had any connection to that white SUV is really not material. Why they brought out that much evidence, I cannot say. I didn't prosecute the case, Your Honor. But clearly. What was the defendant's obstruction of a police officer? Was that a charge that arose from when the police went to his dwelling or his grandmother's dwelling? Yes, they were in the area, and they saw a defendant there. Apparently, why they get out of the car at that point, I can't say. I have no evidence, no testimony about why a police officer may have stopped at that area and gotten out of the car. The defendant saw a police officer, and he ran from them, tried to hide from them. Wouldn't allow them in the house, so that's the charge for obstruction. When was that? When was that? Yes. That was after the crime had been committed. They were looking for suspects in the neighborhood after that SUV, and of course, they had the statement from the victim that he'd been robbed. So they were looking in the neighborhood for any suspects. OK, but this wasn't at the time that the robbery was supposed to have been committed? Yes, ma'am. Your Honor, it was. Just after the time the robbery was committed, that's why the police were in the neighborhood looking for suspects. Yes. But somehow, to get this kind of clarified, the defendant testified, I took my grandmother to Red Lobster, had this long conversation with her friend there. Well, I went to Walgreens, Red Lobster, conversation with a friend at Red Lobster, and then I went and picked up my sister's children at the school. Correct. So all of that has transpired until about 7 o'clock or so. And then apparently, at the time, grandmother was given a lift to ride home. She can't get to her home because they barricaded the home, and there was an obstruction charge against the defendant at that time. Right. Right. Now, regarding the first issue, the defendant argued that the trial judge abused his discretion when not allowing the sur rebuttal testimony of Lakeisha Buckner, who, of course, is the defendant's sister, and Denise Buckner following the rebuttal testimony offered by Sandra Eaton, who is the assistant director of the daycare that Lakeisha's children attend. Now, Ms. Eaton provided documentary evidence that Lakeisha had authorized Denise Buckner, her mother, Dorothy Buckner, the grandmother, and Majano Buckner, an aunt, to pick up her children. The documentary evidence showed that the initials D.B. were on the sign-out sheet for the date of the crime, June 22, 2010. People note that defendant's initials are D.R. and not D.B., and there was no indication that those initials were at all illegible in any way. On cross-examination and rebuttal, Ms. Eaton indicated that typically either she or the daycare director would be at the front desk when someone signed a child out. But Ms. Eaton did not recall on that particular date who picked up Lakeisha's children, I mean, on June 22. So she may not have been the person at the desk on that particular date. There's no indication one way or the other. She did not claim that she was the individual who was at the front desk on that date. Now, regarding the denial of Lakeisha's proposed cerebral rebuttal testimony, again, this is argued in plain error. In a statement of facts, in the main brief, defendant acknowledged that Lakeisha would only have testified that Ms. Eaton never worked the front desk after 5 p.m. Lakeisha was not going to say that defendant picked the children up on that day. I mean, she could not have testified at it, because obviously, she would not have been at the daycare to witness him picking up the children, so she would not have had any direct knowledge of that had defendant been the person. And of course, the initials say that he wasn't. Lakeisha could not have also had any personal knowledge of Ms. Eaton's work schedule, or whether others pick up her children from the daycare. And defendant claimed that he picked up the children on June 22. So she would not have any knowledge, especially of Ms. Eaton's schedule, because she regularly has others pick up her children. So she could not know that regular schedule. Her Sir Rebuttal testimony would not have been proper, because she could not have testified about something that she did not have direct knowledge of, and because it was offered only in regards to Ms. Eaton's alleged normal schedule, which is a collateral matter, not subject to impeachment on Sir Rebuttal. Thus, the exclusion of Lakeisha Buckner's proposed Sir Rebuttal testimony was not an abuse of discretion. Regarding the trial judge's exclusion of Denise Buckner's proposed Sir Rebuttal, initially, of course, the trial judge had allowed Denise to testify for the limited purpose of showing that Denise had been at work at the time of issue and could not have signed the initials DB on the standoff sheet. However, after Denise had been sworn in, the prosecutor objected to her testifying, because Denise had been present throughout the entire trial, including during defendant's testimony. And of course, a motion to exclude witnesses had been granted prior to all testimony. Counsel, that's two minutes. Thank you. The defendant's trial counsel acknowledged that Denise had been present during the trial, and when conferring with the attorneys in chambers about this issue, the trial judge noted that Denise had been seated through, he had noted that she had been seated in the courtroom during the trial, but he did not know at that time she was going to be a witness. That was not listed anywhere. So the trial judge asked the attorneys for suggestions on how to cure the problem. No suggestions were offered at that time. And where are witnesses excluded? Cordon, NRAHSH, excuse me, has said where are witnesses excluded? The affected party must demonstrate that it was deprived of material testimony without its fault. Defendant did not demonstrate that he was deprived of any material testimony in Sir Rebuttal. Even if the defendant had presented Denise's testimony and her evidence, it would not have the defendant picked up his children on the day of the crime. And it would not have shown, also, that the daycare did not adhere to their own policies. Neither woman, Lakeisha or Denise, would have been able to testify to that. What they would have needed to present, if it had been available, would be the documentary evidence from the daycare proving that someone other than the three authorized individuals had been picking up Lakeisha's children, but that was not presented. And the testimony would have not have proved that. Therefore, defendant was not prejudiced by the exclusion of Denise's testimony either. Regarding the time card issue, that's a business record. Denise could not have authenticated the time card. Someone from her workplace would have had to have been present to authenticate the time card as a business record, et cetera. That person apparently was not there. There's no indication in the record that that would have been authenticated. People stand on their brief for all other argument on this issue. And we ask the court to find that the trial judge did not have used his discretion in excluding the thorough rebuttal testimony of both Lakeisha and Denise Buckner. And we ask this court to affirm the conviction and sentence flow. Thank you, Mr. Rostick. Ms. Green, any rebuttal? First, with respect to the second issue, the first issue that I argued, the state indicates that the question as to whether or not the defendant was in jail or what charge he was in jail for, it didn't matter. He was arrested. He was in jail because he was arrested. He wasn't staying at the jail voluntarily. He was there because he was arrested and he was questioned with regard to the armed robbery. So he was arrested, and therefore, it was improper. It's the fact that he was in custody. Yes, he was at the jail. And the defense counsel didn't bring it up. Defense, it was out, and defense counsel dealt with it. I think it's possible that because it wasn't damaging, because it was, or because the defendant's statement wasn't itself damaging, he denied involvement. It may have been something that defense counsel wanted to come out, but couldn't himself, because it would be a denial or a prior consistent statement. Now, with respect to the evidence being close, this evidence was close. This court found, under similar facts, that the evidence was close where the victim in the case is, where the conviction of the defendant is based primarily on an identification of one eyewitness. It's exactly parallel to Sanchez. And because of that, it is parallel. I wanted to just quickly address what the two of you mentioned with respect to the SUV and the officer finding the defendant at his house.  was that the state wanted to indicate that someone from that SUV ran, and an officer chased him into the area where the defendant lived. And then later on, at 6.15 PM, another officer saw Mr. Richardson. That's why that SUV evidence was brought out. They wanted to indicate that someone was heading toward where the defendant lived, and then another officer saw the defendant near his house, which led to the obstruction charge. That was the point of that. But it still didn't indicate that the officer who saw the defendant at 6.15 much later didn't indicate anything about what he was wearing or connect him in any way to the individual that the previous officer chased in that direction.  identifying similar about the defendant and the individual who was chased in that area. And when the officer saw the defendant at 6.15, it's quite possible that where the children were signed out at 5.55, that the defendant did, in fact, pick up the kids. Now, with respect to Eaton's testimony, as the state mentioned, Eaton didn't know anything about that day. The only information she had was tied to those sheets. Now, the state indicates that Lakeisha couldn't testify as to what Eaton's schedule was, but I think that that goes to the weight. That would have gone to what the jury would have determined. I don't think that's something that this court should consider, that her testimony would have been subject to cross. But Lakeisha may well have testified that she had been at the daycare numerous times after 5 o'clock, and every time that she went, Eaton was never there. That could have been her testimony. Who brought out all of this daycare? I picked up my niece's daycare. The defendant. Why? I believe he was just going through what he had done that day, because he indicated that he picked up his grandmother, took her to Red Lobster, picked up the kids. And then when he got home, and his sister was coming, that's when the police were surrounding his house. So it kind of connected the police being there with what Denise was doing. It wasn't really right to do that. I mean, was it really? You've got a timeline of when an incident occurred, and now we're talking about times at almost 6 o'clock. I mean, why would you allow your client to even testify to that? That's a question for defense counsel. I can't say. But it did tie up what he did that day. So that I can't answer. Counsel, that's one minute. Thank you. OK. Just lastly, with respect to the, actually, based on the arguments presented, defendant requests that this court grant him a new trial based on the error of the trial court and the inadmissible admission of his post-arrest silence. Thank you, Ms. Green. I would like, I was remiss not to do this at the beginning, to indicate that Justice Litton is the third person on this panel. He was not able to be here today, but he will be listening to the tapes and will be fully advised of the argument. So we thank you both for your argument this morning. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible. The court will now.